<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| INDUSTRIAL CONSTRUCTION OF NEW JERSEY, INC., <br><br> Petitioner, <br><br> v. <br><br> INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 825, <br><br> Respondent. | Case No. 2:21-cv-09169 (BRM) (ESK) <br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Respondent International Union of Operating Engineers Local 825's ("Local 825") Motion to Confirm Arbitration Award. (ECF No. 10.) Petitioner Industrial Construction of New Jersey, Inc. ("Industrial") opposed the Motion (ECF No. 11), and Local 825 replied (ECF No. 14). Having reviewed the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Local 825's Motion to Confirm Arbitration Award is **GRANTED.**

**I.     BACKGROUND**

Industrial is a subcontractor working on two construction projects in Jersey City (the "Project").[1] (Pet. (ECF No. 1) ¶ 5.) Local 825 is a local union and collective bargaining agent for operating engineers working on the Project. (*Id*. ¶ 2.) A.J.D. Construction Co. ("AJD") is the

---

[1] Although there are two construction projects, the Court will refer to them collectively as the Project. The specific projects are not germane to the ultimate issues to be decided.

general contractor for the Project. (*Id.* ¶ 6.) The Project is governed by a Project Labor Agreement[2] (the "PLA"), which references and incorporates a Collective Bargaining Agreement[3] (the "CBA"). (Cross Pet. (ECF No. 9) ¶ 6.) Industrial and Local 825 are obligated by the terms and conditions of the PLA and CBA. (*Id*. ¶¶ 5–8) The PLA also references and incorporates the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry[4] (the "Plan"), which sets forth the procedure for handling jurisdictional disputes between different local unions over matters related to the assignments of work on the Project. (*Id.* ¶ 10.)

According to Local 825, in April 2020, a Local 825 member-operator employed by Industrial was assigned to operate an elevator on the Project. (Mot. (ECF No. 10) at 4.) In May 2020, Local 825 asserts Industrial contacted the Local 825 hiring hall to request second operator for the Project. (*Id.*) In October 2020, both Local 825 member-operators were removed from the Project, and the work was reassigned to members of Local 3 of the Laborers International Union of North America ("Local 3"). (ECF No. 9 ¶ 9.) According to Local 825, the removal of Local 825 member-operators and reassignment to Local 3 members was a violation of the PLA. (ECF No. 10 at 4.) Specifically, Local 825's position was Industrial violated the "Change of Original Assignment" provision of the Plan, which stated: "When a contractor has made an assignment of work, he shall continue the assignment without alteration unless otherwise directed by an arbitrator or there is an agreement the [Unions] involved." (*Id.*; Giblin Cert., Ex. C (ECF No. 10-4) at 39.) Pursuant to Article 10 of the PLA, jurisdictional disputes over work assignments are resolved by

---

[2] (*See* Giblin Cert., Ex. B (ECF No. 10-4) at 29–36.)

[3] (*See* Giblin Cert., Ex. D (ECF No. 10-4) at 42–44.)

[4] (*See* Giblin Cert., Ex. C (ECF No. 10-4) at 38–40.)

a Plan Administrator. (Ex. B, ECF No. 10-4 at 33–34.) Local 825 submitted its dispute to the Plan Administrator to contest the reassignment of work to Local 3. (ECF No. 10 at 4.)

### A.  Plan Administrator's Proceeding

On October 19, 2020, Local 825 asserts the Plan Administrator notified Industrial's President, Michele Frisina ("Ms. Frisina"), of the dispute. (*Id*. at 4.) According to Local 825, on October 29, 2020, the Plan Administrator again wrote to Industrial to request a response to the dispute and "warned Industrial that a failure to respond would lead to a determination based on [Local 825]'s allegations." (*Id.* at 5.) On November 2, 2020, a determination was reached based solely on the information Local 825 provided.[5] (*Id.*) Specifically, in a letter dated November 2, 2020, the Plan Administrator found "contractor's decision to reassign the work to Local 3 in October 2020 constitutes an impermissible change of the original assignment." (ECF No. 1-1 at 11.)[6] The Plan Administrator directed Industrial to revert to the original assignment with Local 825 member-operators "and maintain such assignment until otherwise directed by an arbitrator under the Plan." (*Id*.) Industrial, however, did not abide by the Plan Administrator's directive.

---

[5] In the Plan Administrator's Letter dated November 2, 2020, the Plan Administrator explains:

> I requested the contractor's position on this dispute on October 19, 2020, but did not receive a response. When [Local 825] informed me on October 29, 2020, that the dispute had not been resolved, I again requested the contractor's position. In that letter, I advised the contractor that if I did not receive a response by the close of business October 30, 2020, I would make a determination based solely on the information provided by [Local 825]. The contractor still has not submitted a response.

(ECF No. 1-1 at 10.)

[6] The Court notes while the Plan Administrator's letter was not provided, portions of the Plan Administrator's letter are directly quoted in Arbitrator Pierson's January 13, 2021 Opinion and Award. (ECF No. 1-1.) For the purposes of this motion, the Court cites Arbitrator Pierson's January 13, 2021 Opinion and Award that reference the Plan Administrator's letter.

(ECF No. 10 at 5.) On November 9, 2020, Local 825 filed a notice of grievance. (*Id.*) On November 20, 2020, Local 825 filed a demand for arbitration pursuant to Article 9 of the PLA. (*Id.*)

B. **Arbitration Proceeding**

On December 18, 2020, Arbitrator J.J. Pierson, Esq. ("Arbitrator Pierson") conducted the arbitration hearing with representatives for Local 825 and Industrial appearing. (ECF No. 1-1 at 1–2.) The issue before Arbitrator Pierson was whether Industrial violated the PLA by failing to rehire the two Local 825 member-operators after the Plan Administrator directed Industrial to revert to its original assignment of work. (*Id.* at 1.) Arbitrator Pierson heard arguments, reviewed documents, and took testimony provided by witnesses from both parties. (*Id.* at 12–22). Specifically, Arbitrator Pierson heard testimony on direct and cross-examination from the two Local 825 member-operators who were removed from the Project. (*Id.* at 14–15.) Local 825 also offered the testimony of its Business Agent who was familiar with the agreements governing the Project. (*Id.* at 15.) Industrial offered the testimony of its Chief Estimator and In-House Project Manager. (*Id.* at 16.) Industrial also presented the testimony of Anthony Frisina ("Mr. Frisina"). (*Id.* at 17.) According to Arbitrator Pierson, Mr. Frisina was responsible for Industrial's operations and familiar with the contract between Industrial and AJD, the general contractor, that covers the scope of work related to the Project. (*Id.* at 17.) As noted by Arbitrator Pierson, Mr. Frisina testified at the arbitration hearing that AJD made the decision to remove the Local 825 member-operators from the Project. (*Id.* at 18.)

During the arbitration proceeding, Industrial raised a defense for lack of notice. (*Id.* at 19.) Industrial claimed they did not receive notice from the Plan Administrator regarding the dispute, and the correspondence relating to the Plan Administrator's determination was only later discovered in Ms. Frisina's spam inbox. (*Id.*) Arbitrator Pierson considered and rejected

Industrial's lack of notice defense, stating, "Industrial demonstrated that receipt of notices would have made little difference" and "Industrial showed no intention or ability to reverse the decision to remove the Operating Engineers." (*Id*.) Notably, Arbitrator Pierson also found "Local 825 provided proof that the Plan documents were sent to Industrial's address of record." (*Id*.)

Industrial also raised the argument that Industrial merely provided payroll services and AJD was the actual employer of the Local 825 member-operators. (*Id*. at 20.) Industrial proffered a letter from AJD to Industrial stating AJD was responsible for the decision to remove the Local 825 member-operators from the Project. (*Id*.) However, in reviewing work orders, the acknowledged hiring hall contract, and employment records, Arbitrator Pierson found the sole letter unconvincing and concluded Industrial was the employer that made the "original assignment" to the Local 825 member-operators and "changed [the] original assignment" to the Local 3 members. (*Id*.)

On January 13, 2021, Arbitrator Pierson issued an arbitration Opinion and Award in favor of Local 825, concluding:

> Based on a finding that the Plan Administrator a) determined that Industrial Construction improperly changed the original assignment of operating elevators to hoist building and construction material and craft members to the Operating Engineers and b) directed Industrial to revert to its original assignments of operating the inside elevators to hoist building and construction material and craft members to Local 825 Operating Engineers, <u>this Arbitrator must sustain the Local 825 grievance</u>, finding that Industrial violated the PLA and the hiring hall procedures of the IUOE Local 825 "Schedule A" Agreement, when refusing and failing to rehire Operating Engineers to operate elevators to hoist building and construction material and craft members on the Pavonia Avenue Project.

(*Id*. at 21.) Arbitrator Pierson ordered Industrial to reassign the two Local 825 member-operators to the Project and requested a calculation of lost wages and benefits for the period between the

5

layoff date and reinstatement date. (*Id*. at 23.) On February 21, 2021, Arbitrator Pierson issued an Interim Award of $264,439.04. (Interim Award (ECF No. 1-2) at 3.) On March 21, 2021, Arbitrator Pierson issued a Final Order confirming the award and ordering Industrial to remit payment. (Final Order (ECF No. 1-3) at 1-2.)

### C.  United States District Court Final Consent Judgment

During the pendency of the arbitration, Local 825 filed a petition before in the United States District Court for the District of Columbia, captioned *International Union of Operating Engineers, AFL-CIO, et al. v. Industrial Construction of New Jersey, Inc.*, Civ. A. No. 1:20-cv-03238-APM, to confirm the Plan Administrator's determinations. (ECF No. 1 ¶ 25.) The parties were referred to mediation and ultimately reached a consent agreement. (ECF No. 10 at 14.) On April 27, 2021, The Honorable Amit P. Mehta, U.S.D.J. entered a Final Judgment by Consent in favor of Local 825, confirming and ordering Industrial to comply with the original assignment determinations issued by the Plan Administrator and ordering Industrial to reimburse Local 825 for attorneys' fees, costs, and expenses. (Cert. of V. Giblin, Final Judgment by Consent (ECF No. 10-4) at 57–58.)

On April 13, 2021, Industrial filed a petition before this Court to vacate: (1) Arbitrator Pierson's arbitration Opinion and Award issued on January 13, 2021 (ECF No. 1-1); Arbitrator Pierson's Interim Award and Order issued on February 21, 2021 (ECF No. 1-2); and (3) Arbitrator Pierson's Final Order issued on March 21, 2021 (ECF No. 1-3) (collectively, the "Arbitration Award"). (Pet. (ECF No. 1) ¶ 1.) On May 24, 2021, Local 825 filed a cross-petition to confirm the

Arbitration Award.[7] (ECF No. 4.) On June 11, 2021, Local 825 filed a Motion to Confirm Arbitration Award. (ECF No. 10.)

## II. LEGAL STANDARD

A district court's review of an arbitration award is narrow, and a district court can only vacate the award in limited circumstances. 9 U.S.C. §§ 9, 10; *see Major League Umpires Ass'n v. Am. League of Prof. Baseball Clubs*, 357 F.3d 272, 279–80 (3d Cir. 2004); *CITGO Asphalt Refining Co. v. PACE Workers Int'l Union Local No. 2-991*, 385 F.3d 809, 815 (3d Cir. 2004) ("Courts play a very limited role in reviewing the decision of an arbitrator appointed pursuant to a collective bargaining agreement."). For example, this Court may vacate an arbitration award "where arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy." 9 U.S.C. § 10(a)(3). "Misconduct," as required by § 10(a)(3), "will not be found 'unless the aggrieved party was denied a fundamentally fair hearing.'" *Vitarroz Corp. v. G. Willi Food Int'l Ltd.*, 637 F. Supp. 2d 238, 248 (D.N.J. 2009) (quoting *Sherrock Bros. v. DaimlerChrysler Motors Co., LLC*, 260 F. App'x 497, 501 (3d Cir. 2008) (quoting *Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.*, 397 F.2d 594, 599 (3d Cir. 1968))). Therefore, where a petitioner alleges the arbitrator excluded relevant evidence, he must also allege he was denied a fundamentally fair hearing as a result. *Office & Prof'l Employees Int'l Union, Local No. 471 v. Brownsville Gen. Hosp.*, 186 F.3d 326, 335 (3d Cir. 1999) (citing *Hoteles Condado Beach, La Concha & Convention Ctr. v. Union De Tronquistas Local 901*, 763 F.2d 34, 40 (1st Cir. 1985) ("Vacatur is appropriate only when the exclusion of relevant evidence so affects the rights of a party that it may be said that he was deprived of a fair hearing.")).

---

[7] The Cross-Motion to Confirm Arbitration Award filed by Local 825 on May 24, 2021 contained procedural deficiencies and was corrected and refiled on June 11, 2021. (ECF No. 9.)

Section 10(a)(3) does not mandate this Court find that every failure by an arbitrator to receive relevant evidence constitutes misconduct. *Vitarroz Corp.*, 637 F. Supp. 2d at 248; *Sherrock Bros.*, 260 F. App'x at 501 (quoting *Newark Stereotypers' Union No. 18*, 397 F.2d at 599). In fact, § 10(a)(3) does not require arbitrators to hear all evidence proffered to them; an arbitrator is only required to provide a party with "an adequate opportunity to present its evidence and argument." *Vitarroz Corp.*, 637 F. Supp. 2d at 248 (quoting *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997)).

### III. DECISION

Local 825 asserts the Arbitration Award should be confirmed because "Arbitrator Pierson's findings—which were based upon his hearing of testimony from five witness, and his review of relevant documentation—are well-grounded in the record and are procedurally and substantively sound." (ECF No. 10 at 1.) Industrial argues the Arbitration Award should be vacated because Arbitrator Pierson "disregarded basic contract law, misapplied the mailbox rule, and confirmed the Plan[] [Administrator]'s underlying jurisdictional decision even though [Industrial] never had a chance to have its case heard on the merits." (ECF No. 11 at 3–4.) Specifically, Industrial contests the following two issues: (1) whether Arbitrator Pierson disregarded the notice provisions of the PLA when Local 825 failed to notify the general contractor of the dispute during the Plan Administrator's proceeding; and (2) whether Arbitrator Pierson misapplied the mailbox rule when Industrial denied receiving notice of the Plan Administrator's determination.

Under the Federal Arbitration Act ("FAA"), there are four grounds upon which a court may vacate an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;

> (2) where there was evident partiality or corruption in the arbitrators, . . . ;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). A court must uphold an arbitration award "so long as it 'draws its essence' from or 'arguably construes or applies' the parties' contract." *Metromedia Energy, Inc. v. Enserch Energy Servs., Inc.*, 409 F.3d 574, 584 (3d Cir. 2005) (quoting *News Am. Pub. v. Newark Typographical Union*, 918 F.2d 21, 24 (3d Cir. 1990)). "When [the arbitrator] makes a good faith attempt to [interpret and enforce a contract], even serious errors of law or fact will not subject his award to vacatur." *Sutter v. Oxford Health Plans, LLC*, 675 F.3d 215, 220 (3d Cir. 2012). "It is thus not the role of a court to correct factual or legal errors made by an arbitrator." *Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 240 (3d Cir. 2005). "The Supreme Court has phrased the same idea in this fashion: 'if an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision.'" *Akers Nat'l Roll Co. v. USW Int'l Union*, 712 F.3d 155, 160 (3d Cir. 2013) (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)).

Here, the crux of Industrial's contentions is that Industrial was deprived of a full and fair hearing, not during the arbitration proceeding, but during the Plan Administrator's proceeding. (ECF No. 11 at 1.) Industrial's first argument is AJD should have been notified of the jurisdictional dispute, as instructed under the PLA, when Local 825 submitted the dispute to the Plan

9

Administrator for resolution. (*Id.* at 7.) According to Industrial, "[h]ad AJD been given a chance to testify in support of [Industrial], AJD's testimony would have established that [Industrial] <u>did not</u> make the original assignment, <u>did not</u> change the assignment of the elevator work, and did not control the elevator operators." (*Id.* at 8.) Industrial does not allege Arbitrator Pierson excluded relevant evidence or refused to hear testimony concerning AJD during the arbitration hearing. Indeed, Industrial was given a full opportunity to present evidence of AJD's control over the original assignment, including a letter from AJD to Industrial in support of Industrial's position.

Moreover, contrary to the claim that AJD's testimony before the Plan Administrator would have established Industrial did not make or change the original assignment, a review of the record reflects Arbitrator Pierson considered the evidence presented to him and determined Industrial made the original assignment when hiring the two Local 825 member-operators and changed the assignment when reassigning the work to Local 3. (*See* ECF No. 1-1 at 18); s*ee also Exxon Shipping Co. v. Exxon Seaman's Union*, 73 F.3d 1287, 1291 (3d Cir. 1996) (noting a court will "only vacate an award if it is entirely unsupported by the record or if it reflects a manifest disregard of the agreement" (quotation and citation omitted)). Therefore, because Industrial was given the opportunity during the arbitration hearing to present evidence of AJD's control over the original assignment and change of assignment, Industrial was not deprived of a full and fair hearing. *See Coastal Gen. Constr. Servs. Corp. v. Virgin Islands Hous. Auth.,* 98 F. App'x 156, 159 (3d Cir. 2004) (defining "misconduct" as conduct "which so affects the rights of a party that it may be said that he was deprived of a fair hearing" (quotation and citation omitted)); *Sherrock Bros.*, 260 F. App'x at 501; *Office & Prof'l Employees Int'l Union, Local No. 471*, 186 F.3d at 335; *Newark Stereotypers' Union No. 18*, 397 F.2d at 599; *Vitarroz Corp.*, 637 F. Supp. 2d at 248.

Industrial's second contention also concerns a lack of notice in connection with the Plan Administrator's proceeding. Industrial denied receiving notices and correspondence sent from the Plan Administrator that were later discovered in Ms. Frisina's spam inbox. (ECF No. 11 at 3.) According to Industrial, Arbitrator Pierson misapplied the mailbox rule when rejecting Industrial's lack of notice defense challenging the service of notice via email communication in the Plan Administrator's proceeding. (*Id.* at 2–3.) Notably, Industrial does not challenge the sufficiency of notice provided in connection to the arbitration hearing. Industrial's claim that it did not receive notice of the Plan Administrator's determination does not constitute a denial of a full and fair hearing in the arbitration proceeding. Indeed, Arbitrator Pierson considered and rejected this notice defense during the arbitration proceeding, finding the argument failed because "Industrial showed no intention or ability to reverse the decision to remove the Operating Engineers." (ECF No. 1-1 at 19.)

Moreover, although correspondence from the Plan Administrator were sent to Industrial via email, Arbitrator Pierson also found "Local 825 provided proof that the Plan documents were sent to Industrial's address of record." (*Id.*) Further, to the extent Industrial claims Arbitrator Pierson committed reversable error when he inappropriately applied the mail-box rule, misapplication of the mail-box rule does not satisfy any of the four grounds that permit vacatur of an arbitration award—especially when proper notice for the arbitration hearing itself was received.[8] *See Brentwood Med. Assocs.* 396 F.3d at 240 ("It is thus not the role of a court to correct

---

[8] To the extent Industrial claims it was deprived of a full and fair hearing caused by a lack of notice during the Plan Administrator's proceeding, those issues were raised and resolved before the United States District Court for the District of Columbia where the Honorable Amit P. Mehta, U.S.D.J. entered a Final Judgment by Consent confirming the Plan Administrator's determination. Industrial cannot now raise concerns regarding the Plan Administrator's proceeding after consenting to the Plan Administrator's determination.

11

factual or legal errors made by an arbitrator."); *Major League Umpires Ass'n*, 357 F.3d at 280. Accordingly, because the Arbitration Award draws its essence from the CBA, and Industrial has not alleged dishonesty, fraud, misconduct or any other grounds upon which vacatur of an arbitration award under the FAA is warranted, the Arbitration Award is confirmed.

### IV. CONCLUSION

For the reasons set forth above, Local 825's Motion to Confirm Arbitration Award is **GRANTED** and **JUDGMENT** on the arbitration award **SHALL BE ISSUED** in favor of local 825.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated: November 17, 2021